UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

JACK and ROSEANNE GOODMAN,
as statutory representatives and parents
of MATTHEW GOODMAN, deceased,

        Plaintiffs,

-vs-                                Case No._____

UNIVERSAL HEALTH SYSTEMS, INC.,
d/b/a LAKESIDE BEHAVIORAL HEALTH
SYSTEMS, a foreign corporation,

        Defendant.

## COMPLAINT FOR PROFESSIONAL NEGLIGENCE

### JURISDICTION

1.    This action for professional negligence involves parties who are residents of different states, and the matter in controversy exceeds the sum of $75,000.00. Accordingly, this Court has jurisdiction over the action pursuant to 28 U.S.C. §1332.

### THE PARTIES

2.    Jack and Roseanne Goodman are residents of Memphis, Shelby County, Tennessee. Jack Goodman is a medical doctor specializing in the field of anesthesiology and his practice is here in the Memphis area. Roseanne Goodman is an attorney by training but is disabled from practicing her profession due to a severe vehicular accident

which occurred a number of years ago. Dr. and Mrs. Goodman bring this action under the authority of the Tennessee Wrongful Death Statute, T.C.A. §20-5-106 et seq.

3. Defendant Universal Health Systems, Inc. ("UHS") has principal offices in the state of Pennsylvania. Upon information and belief, UHS is a for-profit corporation existing by virtues of the laws of the state of Pennsylvania. UHS owns and operates literally hundreds of medical treatment centers throughout the United States. One such facility is Lakeside Behavioral Health System ("Lakeside") in Bartlett, Tennessee. Lakeside's focus is the treatment of mental health disorders.

## LEGAL BASIS FOR THE ACTION AND COMPLIANCE WITH STATE PROCEDURAL REQUIREMENTS

4. This action is for medical negligence being brought pursuant to T.C.A. §29-26-115 et seq., The Tennessee Wrongful Death Statute T.C.A §20-5-106 et seq., and the common law of the State of Tennessee.

5. Plaintiffs have complied with the requirement of §29-26-121 by serving notice on the Defendant via Certified Mail by letter dated April 10, 2009. Defendant has acknowledged receipt of the notice of claim, and subsequent to receipt requested and/or agreed to pre-suit mediation.

6. Filed contemporaneously with this Complaint in compliance with §29-26-122 is a Certificate of Good Faith.

## STATEMENT OF FACTS

7. Matthew Goodman, deceased, was the eldest of two children born to the Plaintiffs. Matthew's date of birth was January 3, 1979.

8. In 2002, Matthew received a Bachelor of Arts degree from the University of Colorado graduating *cum laude* with a 3.473 GPA. Matthew's intention was to attend medical school to become a physician like his father.

9. Prior to continuation of his education, in 2003, Matthew was involved in a severe automobile collision leaving him with permanent nerve damage in his arm accompanied by residual pain. The damage from the automobile collision required that Matthew undergo continuing medical treatment including pain management.

10. Due to his impaired use of his arm, Matthew abandoned preparation for taking the medical school examination. However, Matthew did enter the University of Memphis School of Law for the fall term 2007 and the spring term 2008.

11. Matthew's physical and emotional problems impaired his ability to persevere through the law school semester for fall 2008. By mid-February 2009, it was apparent to Matthew's family that he needed professional help for depression.

12. On February 22, 2009, Matthew was admitted to Lakeside by Paul D. Clien, M.D. Dr. Clien had Matthew admitted as a patient who required constant supervision.

13. At the time of Matthew's initial and subsequent admissions to Lakeside, Lakeside advertised its services to the public representing, *inter alia*, "suicide is preventable."

14. Matthew was discharged from Lakeside on March 2, 2009 even though the suicidal tendencies which Matthew had exhibited typically involve a 30 day treatment.

15. The day after his discharge from Lakeside, Matthew overdosed on prescription medication with the stated intention of ending his own life. He was

3

transported to Methodist Hospital emergency room, then admitted to the hospital and placed on "one-on-one/direct observation" suicide precaution.

16. After two days in Methodist Hospital, Matthew was transferred by the hospital back to Lakeside. He was admitted to Lakeside by Daniel S. Boyd, M.D. and again designated as "high risk."

17. Matthew was discharged from Lakeside on March 12, 2009 with instructions to attend outpatient group therapy for the following week.

18. Dr. Boyd, on or about March 14, 2009, while Matthew was in attendance at outpatient group therapy, determined that Matthew should be once again re-admitted to Lakeside. Dr. Boyd's admission orders indicated that Matthew had exhibited suicidal tendencies.

19. The date of readmission, March 14, 2009, was a Saturday. Lakeside was routinely understaffed but more so on weekends.

20. At approximately 2:00 p.m. on March 14, Matthew was checked into what is known as the "west wing" of Lakeside. The attendant for ensuring that Matthew was properly checked into the facility was Carey White.

21. At all times material hereto, Carey White was an employee of Defendant. All of White's acts and omissions *vis a vis* Matthew were within the scope of his employment with the Defendant.

22. While checking Matt into the west wing of Lakeside, White did not take Matthew's belt. A patient's belt is considered a "Contraband Item" according to Defendant's documents.

23. White's failure to confiscate Matthew's belt violated Lakeside Policy and Procedure Number RM205.

24. Matthew was not kept under continuous employee observation as was warranted by his mental state.

25. At 7:00 p.m. on the 14th of March 2009, after having been unobserved by Defendant's employees for some period of time, Matthew was found hanging from a bathroom door with his own belt around his neck. When discovered, Matthew was already dead.

26. At times prior to and subsequent to the death of Matthew Goodman at Lakeside, there have been numerous incidents of violence including assaults and rapes occurring at Lakeside. These incidents were a result, at least in part, of insufficient staffing by the Defendant.

## NEGLIGENCE OF THE DEFENDANT

27. Defendant violated the applicable standard of care for medical professionals rendering suicide prevention care in that Defendant:

(a) Failed to remove Matthew Goodman's belt which also contravened Defendant's own policies and procedures;

(b) Failed to keep Matthew under constant or at least frequent observation which was required by Matthew's mental condition;

(c) Failed to properly assess Matthew's mental condition; and

(d) Failed to maintain adequate and/or competent staff to render appropriate care for Matthew Goodman and patients similarly situated.

28. Plaintiffs allege that the negligence as set forth herein was the direct and legal cause of the death of Matthew Goodman.

## DEFENDANT'S RECKLESSNESS

27. Plaintiffs allege that the Lakeside facility operates under a "corporate" atmosphere rather than one which is "medical" in nature. Specifically, Plaintiffs allege that profitability of the facility takes precedence over the quality of patient care. In order to enhance profitability, understaffing occurs on a regular basis, and the staff which is present is grossly underpaid for the type of care staff members are expected to render.

28. Plaintiffs allege that the reckless conduct as set forth herein was the direct and legal cause of the death of Matthew Goodman.

## DAMAGES

29. As a direct and legal result of the acts and omissions of the Defendant as set forth in this Complaint, Matthew Goodman was deprived of his life, all of the enjoyments of life including but not limited to the ability to practice a profession and earn a living from same. Plaintiffs, as parents of Matthew, have suffered a loss of consortium which they enjoyed, particularly Mrs. Goodman, with their son.

WHEREFORE, Plaintiffs sue Defendant for the sum of $7,500,000.00 in compensatory damages and punitive damages assessed in an amount consistent with the requirements of Hodges v. S.C. Toof & Co., 833 S.W. 2d 896 (Tenn. 1992). Plaintiffs demand a jury to try the issues when joined.

Respectfully submitted,

GLASSMAN, EDWARDS, WADE,
and WYATT, P.C.


/s/Tim Edwards
Tim Edwards #5353
Edwin Wallis III #23950
26 N. Second Street
Memphis, TN 38103
(901) 527-4673

Case 2:10-cv-02079-tmp   Document 1   Filed 02/03/10   Page 7 of 7   PageID 7